UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRIAN A. THOMAS,

        Petitioner,

**DECISION AND ORDER**
**No. 07-CV-6311T**

-vs-

JAMES CONWAY, Superintendent,
Attica Correctional Facility

        Respondent.
_____

## I. Introduction

*Pro se* Petitioner Brian A. Thomas ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 30, 2004, in New York State, County Court, Wayne County, convicting him, after a bench trial, of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law ("Penal Law") § 130.75[1][a]) and Endangering the Welfare of a Child (Penal Law § 260.10[1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

The charges arose out of sexual conduct between Petitioner and his girlfriend's four year old daughter ("the victim")[1] over an

---

[1] The minor victim's name and identifying information is withheld from this Decision and Order.

-1-

extended period of time. From September 2001 to December 2001, Petitioner lived with the victim, her seven year old brother, and the victim's mother at the victim's mother's apartment in the Town of Sodus, New York. Petitioner stayed home with the children while the victim's mother went to work. Trial Transcript [T.T.] 99-106.

In January 2004, the victim complained to her mother, describing several acts of sexual abuse that she had suffered at the hands of Petitioner over an extended period of time. Shortly thereafter, the victim's mother called the police and took the victim to the doctor. T.T. 112-115.

On January 23, 2004, Petitioner was indicted by a Wayne County Grand Jury and charged with Course of Sexual Conduct Against a Child in the First Degree[2] and Endangering the Welfare of a Child.

Petitioner waived a jury trial and a bench trial was held before the Honorable John Nesbitt on May 26, 2004.

The People called various witnesses, including two expert medical witnesses.

The victim testified that, over a period of time, Petitioner had engaged in various sexual acts with her, and had threatened to "beat her" if she told her mother. T.T. 267-288.

The defense called twelve witnesses who testified to the effect that Petitioner and the victim's mother had a volatile relationship, fought often, and that Petitioner did not maintain

---

[2] The indictment alleged that the sexual conduct occurred over a year long period from September 2001 to September 2002. T.T. 50-51.

continuous contact with the victim's mother during the period in question.  T.T. 358-465.

Petitioner testified on his own behalf and denied all of the allegations against him.  T.T. 515-518.

On June 9, 2004, Petitioner was found guilty as charged and sentenced to a determinate term of 20 years imprisonment. Sentencing Minutes [S.M.] 22-23.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on March 17, 2006.  People v. Thomas, 27 A.D.3d 1075 (4th Dept. 2006).  Leave to appeal to the New York Court of Appeals was denied on July 6, 2006.  People v. Thomas, 7 N.Y.3d 795 (2006).

No collateral motions were filed.

This habeas petition followed, wherein Petitioner seeks habeas relief on the following grounds: (1) the verdict was against the weight of the evidence; and (2) ineffective assistance of trial counsel.  Petition [Pet.]  ¶22A-D.

**III. General Principles Applicable to Habeas Review**

    **A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id.

-4-

This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been

'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**IV. Petitioner's Claims**

**1. Verdict was Against the Weight of the Evidence (Grounds One, Three and Four)**

In grounds one, three, and four of the petition, Petitioner argues that the verdict was against the weight of the evidence. Pet. ¶22A, C, D. Petitioner raised this claim on direct appeal, and it was rejected on the merits.[3] Although the claim has been properly exhausted in the state courts, it does not present an issue that is cognizable by this Court on habeas review.

---

[3] The Appellate Division, Fourth Department found as follows: "[w]e reject defendant's contention that the verdict is against the weight of the evidence . . . . Here, the People presented evidence establishing that, between September 1, 2001 and December 1, 2001, defendant engaged in both oral and vaginal sexual contact with a four-year-old child. The victim provided unsworn testimony that defendant, the live-in boyfriend of her mother, put his penis in her mouth once and into her private more than once while her mother was at work and her brother was outside playing. Defendant's access to the victim during the time of the sexual activity was corroborated by the victim's mother and brother, and the People presented medical evidence establishing that the victim was repeatedly abused. Although defendant presented evidence that he did not have access to the victim during the relevant time period and that he was not residing at the victim's home nor was he babysitting for the victim during the period from September 1, 2001 through December 1, 2001, County Court, as the factfinder, was entitled to credit the evidence presented by the People over that presented by defendant. The court expressly found, inter alia, that the verbal, tonal and general demeanor of the victim during her testimony made her compelling as describing the alleged sexual interaction between her and the defendant, and the court found most compelling the fact that the victim described in her own words the nature of the sexual contacts between the victim and the person she clearly identified as the defendant. The court, as the factfinder, had the advantage of observing the witnesses and, necessarily, was in a superior position to judge veracity than an appellate court, which reviews but the printed record. It cannot be said herein that the testimony presented by the People was incredible as a matter of law, nor can it be said that the court's findings are manifestly erroneous or so plainly unjustified by the evidence that the interests of justice necessitate their nullification." Thomas, 27 A.D.3d at 1075-76.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. See Maldonado v. Scully 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, habeas relief is unavailable to Petitioner and his claim that the verdict was against the weight of the evidence are dismissed.

## 2. Ineffective Assistance of Counsel (Ground Two)

In ground two of the petition, Petitioner contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel based on the following: (1) failure to investigate the

case and call witnesses; and (2) failure to obtain expert witnesses. Pet. ¶22B. Petitioner raised this claim on direct appeal, and it was rejected on the merits. See Thomas, 27 A.D.3d at 1076-77.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

### (a) Failure to Investigate Case and Call Witnesses

First, Petitioner argues that he received ineffective assistance of counsel because counsel failed to properly investigate the case and call witnesses. Pet. ¶22B. He contends that he provided a witness list to his attorney that contained "approximately 60" individuals, the "majority of which were not called, questioned or investigated" by his attorney, that could have assisted his defense. See Pet'r. Pro Se Brief on Appeal, pgs. 3-4. According to Petitioner, these individuals would have testified that he "was not involved or around" the victim's mother during the period in which the alleged abuse occurred. Id. at 4.

Here, the record reflects that counsel called twelve witnesses at trial who testified to the effect that Petitioner and the victim's mother shared a volatile relationship, that they fought often, and that Petitioner did not maintain continuous contact with the victim's mother during the period in question. T.T. 358-465. This testimony, taken as a whole, called into question whether Petitioner had access to the victim during the period alleged in the indictment, and also cast doubt on the victim's mother's credibility. Petitioner has not demonstrated that any of the sixty-some individuals he points to would have provided non-cumulative or non-repetitive testimony to aid in his defense. "The failure to call cumulative or repetitive witnesses is neither ineffective nor prejudicial." Skinner v. Duncan, 01 Civ. 6656 (DAB) (AJP), 2003 U.S. Dist. LEXIS 10102, *137 (S.D.N.Y. June 17,

2003) (citing cases). Counsel's decision to call the twelve particular witnesses he did, while foregoing calling others Petitioner wished him to call, was clearly a tactical decision, and does not need to be disturbed here. See Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983) ("We have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful.")

Moreover, there is nothing in the record before this Court that suggests that counsel was unfamiliar with Petitioner's case or that he failed to properly investigate the case. To the contrary, counsel filed appropriate pre-trial motions, delivered an articulate opening statement that evidenced his familiarity with the case, made appropriate arguments and objections throughout the trial, presented evidence that undermined the prosecution's case, cross-examined the prosecution's medical witnesses, and delivered an effective closing statement. Such conduct cannot be said to be "deficient" within the meaning of Strickland and thus Petitioner was not prejudiced by his attorney's representation.

**(b) Failure to Obtain Medical Experts**

Next, Petitioner alleges that his attorney was constitutionally ineffective for failing to consult and obtain expert witnesses to "counter the state's expert witnesses." Pet. ¶ 22(B).

The Second Circuit has held that under certain circumstances involving sexual offenses, the failure to call an expert witness

-10-

may be grounds for an ineffective assistance of counsel claim. See Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001) (cumulative effect of four errors made by petitioner's counsel in sexual abuse prosecution warranted habeas relief); Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001) (the cumulative weight of counsel's flaws at trial, including the failure to present a medical expert, deprived petitioner of his Sixth Amendment rights); Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005) (holding that counsel's conduct was objectively unreasonable where counsel "essentially conceded" that the physical evidence was indicative of sexual penetration).

Petitioner's case is distinguishable from Lindstadt and its progeny. Unlike Pavel and Lindstadt, Petitioner's attorney skillfully and zealously advocated Petitioner's defense. There is no evidence in the record that Petitioner's attorney committed multiple errors at trial, that, when viewed in the aggregate, amount to constitutionally defective assistance. See "Section IV, 2(a)" above.

Moreover, Petitioner aptly cross-examined the prosecution's expert witnesses, emphasizing that the findings of the medical experts and treating physician were not necessarily indicative of sexual abuse. In this regard, counsel's decision not to consult with a medical expert was not objectively unreasonable, nor did it prejudice the Petitioner.

At Petitioner's trial, the prosecution called two experts in child sexual abuse as well as the victim's treating physician – all

-11-

of whom examined the victim on various dates. The first expert witness, Dr. Michael Jordan, testified that the victim's hymen had been "significantly obliterated" and a dilation of the victim's urethra resulted in incontinence. T.T. 65-69. Dr. Jordan concluded that the examination was "consistent with . . . her history that [the victim] had described penile penetration in the vulva area." Id. On cross-examination, however, defense counsel elicited the following testimony: that the victim's incontinence could be caused by conditions other than abuse; that it was impossible to determine what the object of penetration was (i.e., the victim may not have been penetrated by an adult male penis); and the timeframe during which the penetration occurred could not be established. T.T. 81-83, 88, 93, 96.

The second expert, Dr. Ann Lenane, testified that during an examination of the victim, she observed an abnormal hymen, a dilated urethra, and chronic trauma. T.T. 178-179. On cross-examination, Dr. Lenane acknowledged that a dilated urethra, alone, is not indicative of sexual abuse, that she noted no other abnormalities in the victim's labia and rectum, and that it was impossible to determine with what the victim was penetrated, how many times, or during which time period. While petitioner was alleged to have committed the sexual acts over a one year period from September 2001 to September 2002, Dr. Lenane testified that the remoteness of the trauma could be as recent as January 2004. Finally, Dr. Lenane stated that there was no "direct evidence" that

an adult male sexually abused the victim, as it is difficult for an adult male to penetrate a child of the victim's age. T.T. 193-198.

The victim's treating physician, Dr. Martha Kincaid, testified that she observed no abnormalities in her examinations of the victim in 2000 and 2001 other than frequent urination. T.T. 211-215. Dr. Kincaid stated on cross-examination that she did not undergo a more thorough examination of the victim due to the absence of trauma, cuts, or tears, but would have if, "anything under screening . . . visual inspection, was abnormal." T.T. 223-230. The incontinence and bed wetting, the physician testified, was "very common" in a 3 or 4 year old girl. T.T. 223.

Because the prosecution's witnesses testified that the results of the victim's examinations may or may not be indicative of sexual abuse, there would be nothing for a defense expert to contest. Stated another way, had defense counsel called his own medical witness, the testimony would likely have established "essentially the same facts that defense counsel was able to demonstrate on cross-examination." Jackson v. Yates, No. C-07-00099(MHP), 2008 U.S. Dist. LEXIS 1522, *26 (N.D.Cal. Jan. 9, 2008); see also McHerrin v. Poole, No. 06-CV-6095(MAT), 2009 U.S. Dist. LEXIS 111355, *13 (W.D.N.Y. Dec. 1, 2009) ("The record indicates that trial counsel cross-examined [the prosecution's expert] about the absence of physical trauma in light of the victim's allegation of rape. In particular, counsel elicited testimony from [the expert] that there were no objective findings in the victim's medical

records . . . . Had Petitioner's trial counsel called his own medical witness, the testimony would have likely established similar facts that counsel was able to demonstrate on cross-examination."). In this regard, defense counsel's decision not to consult or call a medical expert was not objectively unreasonable. Even if the Court were to find that counsel's decision did not constitute trial strategy, there is nothing to suggest that the outcome of Petitioner's trial would have been different had such an expert been called to testify.

Accordingly, the Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of settled Supreme Court law. The claim is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: June 7, 2010
Rochester, New York